Robert J. Cino, Esq. (Bar ID #030672008)
Linda J. Posluszny, Esq. (Bar ID #033212008)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PAUL MYERS | : | |
| 203b Willow Turn | : | |
| Mount Laurel, NJ 08054 | : | Civil Action No. |
| | : | |
| Plaintiff, | : | |
| | : | **NOTICE AND PETITION FOR** |
| v. | : | **REMOVAL OF CASE FROM THE** |
| | : | **SUPERIOR COURT OF NEW JERSEY,** |
| NATIONAL DCP, LLC | : | **LAW DIVISION, BURLINGTON** |
| 20 E. Park Dr. | : | **COUNTY** |
| Westampton, NJ 08060 | : | |
| | : | |
| Defendant. | : | |

To:   William T. Walsh, Clerk of Court        David N. Korsen, Esq.
       United States District Court             Andrew R. Olcese, Esq.
       for the District of New Jersey           Karpf, Karpf & Cerutti, P.C.
       Mitchell H. Cohen Building &             3331 Street Rd.
       U.S. Courthouse                          Two Greenwood Square, Suite 128
       Fourth & Coopers Streets, Room 1050      Bensalem, PA 19020
       Camden, NJ 07102                         Attorneys for Plaintiff

Defendant National DCP, LLC ("Defendant"), pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, respectfully submits this Notice and Petition For Removal of a Case from the Superior Court of New Jersey, Law Division, Burlington County, bearing Docket No. BUR-L-001276-21, and as grounds for removal alleges as follows:

1.     On June 15, 2021, Plaintiff Paul Myers ("Plaintiff"), filed a civil action titled <u>Paul Myers v. National DCP, LLC.</u>, Docket No. BUR-L-001276-21, pending in the Superior Court of New Jersey, Law Division, Burlington County (the "State Action").  A true and correct copy of the summons and complaint are annexed hereto as Exhibit A.

2.     The summons and complaint were delivered via process server to National DCP, LLC in Westampton, New Jersey on June 18, 2021.  The summons and complaint were the initial pleadings received by Defendant setting forth the claims upon which Plaintiff's action is based.  <u>See</u> Exhibit A.

3.     This action is being removed to federal court within thirty (30) days of receipt by Defendant of a paper from which it could first be ascertained that this action is removable.  As such, it is timely filed under 28 U.S.C. § 1446.

4.     Defendant has not filed an answer or other pleading to the complaint, or made any appearance or argument in the State Action.

5.     Removal is proper under 28 U.S.C. § 1441(a) because this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 as this action involves claims that relate to the laws of the United States – specifically, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, <u>et</u> <u>seq.</u>

a.     In the complaint, Plaintiff alleges, <u>inter alia</u>, that Defendant violated his rights under the FMLA.  <u>See</u> Exhibit A, at Count VI.

b.     Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's FMLA claims.

7.     To the extent any of Plaintiff's claims do not relate to the FMLA, this Court nevertheless has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

8.     Venue is proper in this Court.

Defendant submits this Notice and Petition of Removal without waiving any defenses to the claims asserted by Plaintiff, including improper service of process or Plaintiff's failure to state any claims upon which relief may be granted.

9.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice and Petition of Removal is being served upon all parties and filed with the Clerk of the Superior Court of New Jersey, Law Division, Burlington County.

10.    By copy of this document and in accordance with the Certificate of Service, Defendant is providing notice to all Parties in this action of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Burlington County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

By: s/ *Robert J. Cino*
Robert J. Cino
Linda J. Posluszny

ATTORNEYS FOR DEFENDANT
NATIONAL DCP, LLC

Dated:  July 16, 2021
4824-2239-4352, v. 1

# EXHIBIT A

## SUMMONS

| | |
|---|---|
| Attorney(s)  Karpf, Karpf & Cerutti, P.C. | **Superior Court of New Jersey** |
| Office Address  3331 Street Road | |
| Town, State, Zip Code  Two Greenwood Square, Suite 128 | Burlington          COUNTY |
| Bensalem, PA 19020 | Civil          DIVISION |
| Telephone Number  (215) 639-0801 | Docket No: BUR-L-001276-21 |
| Attorney(s) for Plaintiff  David N. Korsen, Esq. | |
| Paul Myers | |

| | |
|---|---|
| Plaintiff(s) | **CIVIL ACTION SUMMONS** |
| Vs. | |
| National DCP, LLC | |
| Defendant(s) | |

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey.  The complaint attached to this summons states the basis for this lawsuit.  If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it.  (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153_deptyclerklawref.pdf.)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ  08625-0971.  A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed.  You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above.  A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
Clerk of the Superior Court

DATED:   6/16/2021

Name of Defendant to Be Served:  National DCP, LLC

Address of Defendant to Be Served:  20 E. Park Drive, Westampton, NJ 08060

Revised 09/04/2012, CN 10792-English (Appendix XII-A)

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl.,  Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records,  Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

Directory of Superior Court Deputy Clerk's Offices / County Lawyer Referral and Legal Services
Revised 08/21/2013, CN: 10153

Page 1 of 3

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street,  Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010

**KARPF, KARPF & CERUTTI, P.C.**
By: David N. Korsen, Esq.
Attorney ID: 165462015
By: Andrew R. Olcese, Esq.
Attorney ID: 293552019
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
P - (215) 639-0801
F - (215) 639-4970

_____

| | |
|---|---|
| PAUL MYERS : | SUPERIOR COURT OF NEW JERSEY |
| 203b Willow Turn : | BURLINGTON COUNTY LAW DIV. |
| Mount Laurel, NJ 08054 : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | DOCKET NO: |
| NATIONAL DCP, LLC : | |
| 20 E. Park Dr. : | |
| Westampton, NJ 08060 : | **JURY TRIAL DEMANDED** |
| : | |
| Defendant. : | |

_____:

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## I.   Introduction

1.     This action has been initiated by Paul Myers (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against National DCP, LLC ("hereinafter "Defendant") for violations of the New Jersey Law Against Discrimination ("NJ LAD"), the Jake Honig Compassionate Use Medical Cannabis Act ("CUMCA" – N.J.S.A. § 24:6I-1 et seq.), the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA" – N.J.S.A. 24:6I-31 et seq.) and New Jersey common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## II.    Parties

2.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

3.      Plaintiff is an adult who resides at the above-captioned address.

4.      Defendant is a company that engages in procuring, contracting, and delivering food, packaging, and equipment needs.

5.      While Defendant is headquartered in Georgia, Plaintiff physically worked in Defendant's Westampton, NJ location (as indentified in the above-captioned address).

6.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## III.    Factual Background

7.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.      Plaintiff is a 53-year-old male.

9.      Plaintiff was hired by Defendant on or about January 14, 2019.

10.     At all times during his employment with Defendant, Plaintiff held the position of a "Dry Selector."

11.     In his position as a Dry Selector, Plaintiff used a headset unit to log in a certain doc number from a work ticket. After doing so, the headset unit would advise Plaintiff where to pick certain items needed for that particular doc. He would then retrieve those items and bring them to the doc door. Plaintiff would then repeat this action multiple times per day.

12.     At all times relevant herein, Plaintiff was supervised by Quran (last name unknown) and Greg (last name unknown).

13.     During his employment with Defendant, Plaintiff suffered from various disabilities, including but not limited to prostate cancer and Crohn's disease.

14.     As a result of Plaintiff's aforesaid health conditions, he experienced fatigue, extreme abdominal pains, diarrhea, and loss of appetite and was (at times) limited in his ability to perform some daily life activities, including but not limited to sleeping, eating, working, and performing manual tasks (among other daily life activities).

15.     Plaintiff apprised Defendant's management and Human Resources ("HR") department of his aforesaid disabilities and the symptoms associated with said disabilities.

16.     Despite his aforesaid health conditions and limitations, Plaintiff was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable accommodations (discussed further *infra*).

17.     Beginning in 2019, Plaintiff requested and was approved for intermittent time off under the FMLA to care for and treat for his aforementioned disabilities.

18.     As a result of being diagnosed with prostate cancer in or about November of 2019, Plaintiff was required to undergo prostate surgery on February 26, 2020.

19.     In connection with his prostate surgery, Plaintiff requested and took a medical leave of absence on or about February 26, 2020 under the FMLA for approximately two (2) months and returned to work without restrictions in or about late April of 2020.

20.     Even though Plaintiff's surgery was effective as it pertains to his prostate cancer, he continues to suffer from Crohn's disease.

3

21.     Therefore, after returning to work in April of 2020 (discussed *supra*), Plaintiff continued to utilize intermittent time off under the FMLA to care for and treat for his Crohn's disease.

22.     Towards the end of his employment with Defendant, Plaintiff began to be subjected to hostility and animosity by Defendant's management, including but not limited to being questioned about his need to take FMLA leave, making inferences that Plaintiff was abusing FMLA, and treating Plaintiff in a rude and condescending manner.

23.     Plaintiff also observed other employees who were approved to take FMLA on an intermittent basis being treated in the same hostile manner as he was during this time (discussed *supra*).

24.     Because it was nearly impossible for Plaintiff to get medication to treat his Crohn's disease during the COVID-19 pandemic, he spoke with his doctor regarding alternative treatment methods. Eventually, it was recommended by Plaintiff's doctor that he use cannabis to as part of his therapy for Crohn's disease and Plaintiff started the process of registering with the Cannabis Regulatory Commission.

25.     On February 22, 2021, Governor Phil Murphy signed into legislation the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), which legalized the possession and recreational use of small amounts of marijuana for adult individuals over the age of 21.

26.     CREAMMA specifically provides that :

> No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items, and an employee shall not be subject to any

4

adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid from engaging in conduct permitted under [CREAMMA].

. . .

A drug test may also be done randomly by the employer, or as part of a pre-employment screening, or regular screening of current employees to determine use during an employee's prescribed work hours. The drug test shall include scientifically reliable objective testing methods and procedures, such as testing of blood, urine, or saliva, ***and a physical evaluation in order to determine an employee's state of impairment***. The physical evaluation shall be conducted by an individual with the necessary certification to opine on the employee's state of impairment, or lack thereof, related to the usage of a cannabis item in accordance with paragraph (2) of this subsection.

N.J.S.A. §24:6I-52n (emphasis added).

27.     On February 24, 2021, after almost a full day of work, Plaintiff was informed by Quran that he was required to undergo a random drug test.

28.     Plaintiff agreed to and underwent the aforesaid random drug test (which was performed at Defendant's facility) but advised his supervisor, Quran, that he did not believe he would pass the drug test, as he uses marijuana for medicinal purposes outside of work hours as part of his therapy/treatment regimen for Crohn's disease and was in the process of being approved for a medical marijuana card.

29.     However, Plaintiff's use of marijuana at the time he was subjected to a random drug test was legally permissible in the state of New Jersey regardless if he had a medical card, documented medical authorization, or even if he was using it recreationally (although Plaintiff unequivocally used marijuana for medicinal purposes associated with his Crohn's disease).

30.     In fact, Plaintiff's use of marijuana to treat his disabilities was tantamount to other forms of treatment outside of prescription medication, such as exercise, dietary changes, and sleep requirements.

31.     Plaintiff's supervisor, Quran, responded to Plaintiff admission (discussed in Paragraph 28 of the instant Civil Action Complaint) by stating that he did not think it would be a big deal, he was a great employee and that Plaintiff should wait for HR to notify him of the results and the next steps going forward.

32.     Plaintiff was not asked or required to undergo a physical evaluation in order to determine his state of impairment in connection with the aforesaid random drug test.

33.     Following his random drug test on February 24, 2021, Plaintiff continued to physically work for Defendant until March 8, 2021.

34.     New Jersey's Jake Honig Compassionate Use Medical Cannabis Act ("CUMCA") provides that it is illegal to terminate an employee based on his/her status as a registrant with the Cannabis Regulatory Commission and requires the following steps be taken by an employer when an employee tests positive for cannibas:

> (1) If an employer has a drug testing policy and an employee or job applicant tests positive for cannabis, the employer shall offer the employee or job applicant an opportunity to present a legitimate medical explanation for the positive test result, and shall provide written notice of the right to explain to the employee or job applicant.
>
> (2) Within three working days after receiving notice pursuant to paragraph (1) of this subsection, the employee or job applicant may submit information to the employer to explain the positive test result, or may request a confirmatory retest of the original sample at the employee's or job applicant's own expense. As part of an employee's or job applicant's explanation for the positive test result, the employee or job applicant may present an authorization for medical cannabis issued by a health care practitioner, proof of registration with the commission, or both.

N.J.S.A. §24:6I-6.1

35.     On or about March 8, 2021, Plaintiff was presented with a letter from Roseann

Trenich (hereinafter "Trenich"), which was dated March 5, 2021. The letter stated (in part) as

follows:

> Dear Paul:
>
> On March 4, 2021, the Company was notified that the drug test you
> underwent on February 24, 2021 resulted in a positive test result for
> marijuana. A copy of the test result is enclosed.
>
> Please be advised that, within three working days of your receipt of this
> letter, you have the right to:
>
>> 1.  Provide the company with a legitimate medical explanation of
>>     the positive marijuana test result (such as a physician's
>>     authorization to use medical marijuana or proof of registration
>>     with the New Jersey Medical Marijuana Program) . . .

36.     Following his receipt of this letter, Plaintiff called his physician's office to see if

he could schedule an appointment in order to obtain a written authorization for the use of

medical marijuana (as his use of marijuana was recommended by his physician as a therapy for is

Crohn's disease previously); however, Plaintiff was informed that the first available appointment

would not be until March 24, 2021.

37.     As a result of not being able to schedule a doctor's appointment until March 24,

2021, Plaintiff contacted Trenich and asked for an extension to get the aforesaid requested

medical authorization. In response, Trenich questioned Plaintiff's ability to get a doctor's

appointment scheduled sooner (as if Plaintiff was lying about his inability to schedule one before

March 24, 2021) and informed Plaintiff that she could not give him any extensions.

38.     Fortunately, Plaintiff was informed by his doctor's office to continue to call in each day to see if there was availability because they could potentially schedule him for an appointment if someone else cancelled.

39.     Therefore, Plaintiff continued to call in each day to his doctor's office to see if he could schedule an appointment within the three-day period that Defendant had afforded him to obtain the aforesaid medical authorization.

40.     On March 10, 2021, when Plaintiff called his doctor's office to see if there were any cancellations, he was informed that someone had cancelled their appointment for March 11, 2021 at 2:15 and asked if he wanted to be scheduled for that time. Plaintiff confirmed and was scheduled to meet with his physician at 2:15 on March 11, 2021.

41.     Following the call with his doctor on March 10, 2021, Plaintiff immediately contacted Trenich to inform her that he was able to schedule a doctor's appointment for March 11, 2021 and would have the doctor complete a medical authorization, which he would produce immediately following his doctor's appointment. Trenich responded by stating that she was "not going to go back and forth with [him] anymore" and that his employment with Defendant was "terminated."

42.     Despite his termination, Plaintiff kept his doctor's appointment for March 11, 2021 (as he did not want to be charged a cancellation fee) and during the visit, his physician confirmed he would have provided the medical authorization requested. However, Plaintiff informed his physician that he had been terminated from his job the day prior and therefore, did not believe that the medical authorization was necessary anymore.

43.     On or about March 15, 2021, Plaintiff received a letter from Trenich dated March 11, 2021 which stated "This letter serves to confirm National DCP, LLC  . . .  termination of

your employment for Violation of Policy, specifically Failure of Drug Test *effective Thursday, March 11, 2021.*"

44.    Plaintiff was shocked to see that Defendant labeled his separation date as March 11, 2021 and believes that his termination was completely illegal and discriminatory as:

(1) Plaintiff was specifically informed on March 10, 2021 that he was terminated from his employment with Defendant;

(2) Trenich was apprised by Plaintiff on March 10, 2021 that he managed to schedule a last minute appointment with his doctor on March 11, 2021 in order to obtain the medical authorization document requested by Defendant via letter on March 8, 2021; however, despite this information, Trenich abruptly and without explanation (other than "I am not going back and forth with you anymore") terminated Plaintiff's employment before he even had the opportunity to obtain a medical authorization and even though he was still within the three-day time period provided for under CUMCA;

(3) Trenich never informed Plaintiff during their telephone conversation on March 10, 2021 that his termination would be effective March 11, 2021. Instead, Trenich told Plaintiff that he was being terminated that day – March 10, 2021 (making Plaintiff believe that there was no reason for him to obtain the aforesaid medical authorization when he appeared for his doctor's appointment on March 11, 2021);

(4) Had Plaintiff known that his termination was not effective until March 11, 2021, Plaintiff would have obtained the aforesaid medical authorization and

produced it to Defendant immediately after his doctor's appointment (as he previously told Trenich he would do);

(5) Plaintiff was terminated solely due to the presence of cannabinoid metabolites in his bodily fluid from his legal use of marijuana under CREAMMA; and

(6) Plaintiff was never given a physical evaluation in connection with Defendant's random drug test and Plaintiff was not physically impaired (as Plaintiff strictly used marijuana in his private residence during non-working hours and long before he was scheduled to report to work on any given day).

45.     Plaintiff believes and therefore avers that his termination from Defendant was unlawful and discriminatory.

## Count I
## Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; & [3] Failure to Accommodate)

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.     Plaintiff suffered from qualifying health conditions under the NJ LAD, which have and continue to limit his ability (at times) to perform some daily functions.

48.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job with reasonable accommodations.

49.     For example, Plaintiff requested and utilized intermittent and block time leave under the FMLA to care for and treat for his aforesaid health conditions.

50.     Towards the end of his employment with Defendant, Plaintiff was subjected to animosity and hostility in retaliation for his requests and as a means to intimidate him from using additional protected leave.

51.     Separate and apart from intermittent time off, Plaintiff's physician recommended (as part of his Crohn's therapy) the use of marijuana to help reduce the symptoms he was experiencing associated with Crohn's.

52.     As of February 22, 2021, the state of New Jersey legalized the possession and recreational use of small amounts of marijuana for adult individuals over the age of 21.

53.     On February 24, 2021, Plaintiff underwent a random drug test required by Defendant, wherein he tested positive for marijuana.

54.     Plaintiff explained to Defendant's management that he used marijuana outside of working hours to care for his aforesaid Crohn's disease.

55.     As a result of his positive drug test, Plaintiff was required to produce to Defendant a medical authorization from his physician regarding his use of marijuana for medicinal purposes within three (3) days or he would be subject to termination.

56.     However, Plaintiff's use of marijuana at the time he was subjected to a random drug test was legally permissible in the state of New Jersey regardless if he was registered with the Cannabis Regulatory Commission, had documented medical authorization, or even if he was using it recreationally (versus for medicinal purposes) – although Plaintiff unequivocally used marijuana solely as part of his therapy related to his Crohn's disease.

57.     In fact, Plaintiff's use of marijuana to treat his disabilities was tantamount to other forms of treatment outside of prescription medication, such as exercise, dietary changes, and sleep requirements.

58.     Despite the legalization of marijuana, Plaintiff made every effort to obtain the medical authorization that Defendant had requested and was able to schedule a doctor's appointment on March 11, 2021 to get the aforesaid authorization.

59.     However, before Plaintiff had the opportunity to obtain the medical authorization required by Defendant (discussed *supra*), Plaintiff was abruptly and without reason informed by Trenich that he was being terminated from his employment on March 10, 2021.

60.     On or about March 15, 2021, Plaintiff received a letter from Trenich dated March 11, 2021 which stated "This letter serves to confirm National DCP, LLC  . . .  termination of your employment for Violation of Policy, specifically Failure of Drug Test *effective Thursday, March 11, 2021*."

61.     Based on the foregoing and for the reasons discussed in Paragraph 44 of the instant Civil Action Complaint, Plaintiff believes and therefore avers that Defendant terminated his employment because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; and/or (4) Defendant's failure to engage in the interactive process and accommodate him (including refusing him the ability to use marijuana for medicinal purposes outside of working hours).

62.     These actions as aforesaid constitute violations of the NJ LAD.[1]

**Count II**
**Violations of New Jersey's Jake Honig Compassionate Use Medical Cannabis Act**
**("CUMCA" – N.J.S.A. § 24:6I-1 et seq.)**
**(Wrongful Termination & Failure to Provide Sufficient Time to Obtain Medical Authorization)**

63.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[1] *See Wild v. Carriage Funeral Holdings, Inc.*, 241 N.J. 285, 224 A.3d 1206, 1207 (2020) (holding employer's refusal to permit an employee to use medical marijuana can constitute a violation of the NJ LAD).

64.     Plaintiff has and continues to suffer from "qualifying medical condition[s]" within the meaning of N.J.S.A. § 24:6I-3.

65.     Plaintiff is a "qualifying patient" within the meaning of N.J.S.A. § 24:6I-3.

66.     CUMCA provides that it is illegal to terminate an employee based on his/her status as a registrant with the Cannabis Regulatory Commission and requires an employer to take the following steps before terminating an employee who tests positive for cannibas:

> (3) If an employer has a drug testing policy and an employee or job applicant tests positive for cannabis, the employer shall offer the employee or job applicant an opportunity to present a legitimate medical explanation for the positive test result, and shall provide written notice of the right to explain to the employee or job applicant.

> (4) Within three working days after receiving notice pursuant to paragraph (1) of this subsection, the employee or job applicant may submit information to the employer to explain the positive test result, or may request a confirmatory retest of the original sample at the employee's or job applicant's own expense. As part of an employee's or job applicant's explanation for the positive test result, the employee or job applicant may present an authorization for medical cannabis issued by a health care practitioner, proof of registration with the commission, or both.

> N.J.S.A. §24:6I-6.1

67.     On February 24, 2021, Plaintiff underwent a random drug test required by Defendant, wherein he tested positive for marijuana.

68.     Plaintiff explained to Defendant's management that he used marijuana outside of working hours to care for his aforesaid Crohn's disease.

69.     As a result of his positive drug test, Plaintiff was required to produce to Defendant a medical authorization from his physician regarding his use of marijuana for medicinal purposes within three (3) days or he would be subject to termination.

70.     Plaintiff made every effort to obtain the medical authorization that Defendant had requested and was able to schedule a doctor's appointment on March 11, 2021 to get the aforesaid authorization.

71.     However, before Plaintiff had the opportunity to obtain the medical authorization required by Defendant (discussed *supra*), he was abruptly and without reason informed by Trenich that he was being terminated from his employment on March 10, 2021.

72.     On or about March 15, 2021, Plaintiff received a letter from Trenich dated March 11, 2021 which stated "This letter serves to confirm National DCP, LLC . . . termination of your employment for Violation of Policy, specifically Failure of Drug Test *effective Thursday, March 11, 2021*."

73.     Plaintiff was shocked to see that Defendant labeled his separation date as March 11, 2021 and believes that his termination was completely illegal under CUMCA:

> (1) Plaintiff was specifically informed on March 10, 2021 that he was terminated from his employment with Defendant;
>
> (2) Trenich was apprised by Plaintiff on March 10, 2021 that he managed to schedule a last minute appointment with his doctor on March 11, 2021 in order to obtain the medical authorization requested by Defendant via letter on March 8, 2021; however, despite this information, Trenich abruptly and without explanation (other than "I am not going back and forth with you anymore") terminated Plaintiff's employment before he even had the opportunity to obtain the medical authorization and even though he was still within the three-day time period provided for under CUMCA;

(3) Trenich never informed Plaintiff during their telephone conversation on March 10, 2021 that he would be terminated effective March 11, 2021. Instead, Trenich told Plaintiff that he was being terminated that day – March 10, 2021 (making Plaintiff believe that there was no reason for him to obtain the aforesaid medical authorization when he appeared for his doctor's appointment on March 11, 2021); and

(4) Had Plaintiff known that his termination was not effective until March 11, 2021, he would have obtained the aforesaid medical authorization and produced it to Defendant immediately after his doctor's appointment (as he previously told Trenich he would do).

**Count III**
**Violations of the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act**
**("CREAMMA" – N.J.S.A. 24:6I-31 et seq.)**

74.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75.    On February 22, 2021, Governor Phil Murphy signed into legislation the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act ("CREAMMA"), which legalized the possession and recreational use of small amounts of marijuana for adult individuals over the age of 21.

76.    CREAMMA specifically provides that :

No employer shall refuse to hire or employ any person or shall discharge from employment or take any adverse action against any employee with respect to compensation, terms, conditions, or other privileges of employment because that person does or does not smoke, vape, aerosolize or otherwise use cannabis items, and an employee shall not be subject to any adverse action by an employer solely due to the presence of cannabinoid metabolites in the employee's bodily fluid from engaging in conduct permitted under [CREAMMA].

. . .

> A drug test may also be done randomly by the employer, or as part of a pre-employment screening, or regular screening of current employees to determine use during an employee's prescribed work hours. The drug test shall include scientifically reliable objective testing methods and procedures, such as testing of blood, urine, or saliva, and a physical evaluation in order to determine an employee's state of impairment. The physical evaluation shall be conducted by an individual with the necessary certification to opine on the employee's state of impairment, or lack thereof, related to the usage of a cannabis item in accordance with paragraph (2) of this subsection.

N.J.S.A. §24:6I-52n.

77.     On February 24, 2021, Plaintiff underwent a random drug test required by Defendant, wherein he tested positive for marijuana.

78.     Plaintiff was never given a physical evaluation in conjunction with the aforesaid random drug test to determine his state of impairment.

79.     Plaintiff explained to Defendant's management that he used marijuana outside of working hours to care for his aforesaid Crohn's disease.

80.     Plaintiff was not under the influence of marijuana during working hours on February 24, 2021 or any other date of his employment.

81.     On or about March 15, 2021, Plaintiff received a letter from Trenich dated March 11, 2021 which stated "This letter serves to confirm National DCP, LLC . . . termination of your employment for Violation of Policy, specifically Failure of Drug Test effective Thursday, March 11, 2021."

82.     Plaintiff believes and therefore avers that his termination from National DCP was in violation of CREAMMA, as he was terminated (1) solely due to the presence of cannabinoid metabolites in his bodily fluid from his legal use of marijuana under

CREAMMA; (2) before ever being given a physical evaluation in connection with Defendant's random drug test; and (3) even though he was not physically impaired (as Plaintiff strictly use marijuana in his private residence outside of working hours and well in advance of having to report to work on any given day).

**Count IV**
**<u>Common-Law Wrongful Termination</u>**
**(Public Policy Violation)**

83.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

84.     The passage of the NJCUMMA made clear that the public policy of the State of New Jersey is to provide employment protections for citizens of the state who qualify for the medical use of marijuana and register as qualifying patients with the Cannabis Regulatory Commission. *See* N.J.S.A. § 24:61-2.

85.     In providing protections from discriminatory hiring decisions based on the medical use of marijuana, the legislature made clear that the public policy of the state was to ensure that qualified patients were not subject to adverse employment decisions based on their lawful use of medical marijuana for palliative purposes.

86.     Defendant terminated Plaintiff because of his use of marijuana for medicinal purposes.

87.     These actions as aforesaid constitute violations of the public policy of New Jersey.

**Count V**
**Common-Law Wrongful Termination**
**(Public Policy Violation)**

88.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

89.     The passage of the CREAMMA made clear that the public policy of the State of New Jersey is to provide employment protections for citizens of the state who legally use marijuana within the confines set by CREAMMA.  *See* N.J.S.A. § 24:61-2.

90.     In providing protections from discriminatory employment decisions based on the legal use of marijuana, the legislature made clear that the public policy of the state was to ensure citizens were not subject to adverse employment decisions solely due to the presence of cannabinoid metabolites in the employee's bodily fluid from his/her legal use of marijuana under CREAMMA.

91.     Defendant terminated Plaintiff solely due to the presence of cannabinoid metabolites in the his bodily fluid from his legal use of marijuana under CREAMMA

92.     These actions as aforesaid constitute violations of the public policy of New Jersey.

**Count VI**
**Violations of Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
**- Against All Defendants -**

93.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

94.     Plaintiff was a full-time employee who worked for Defendant for more than 1 year within a location that employed at least 50 employees within 75 miles.

95.     Plaintiff exercised his FMLA entitlements an "intermittent" basis, as permitted by the FMLA since 2019.

96.     Plaintiff also exercised his FMLA entitlements on a "block" basis, as permitted by the FMLA from February of 2020 through April of 2020.

97.     At all times in 2019, 2020, and 2021, Plaintiff was an eligible employee under the FMLA.

98.     Towards the end of his employment, Plaintiff was subjected to hostility and animosity in response to his requests and use for time off under the FMLA.

99.     Plaintiff also observed other employees who were approved to take FMLA on an intermittent basis being treated in the same hostile manner as he was during this time (discussed *supra*).

100.    Plaintiff believes and therefore avers that Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA; (2) considering Plaintiff's need for FMLA leave in making the decision to terminate his employment; (3) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA leave; and (4) terminating Plaintiff's employment to deter others and/or prevent Plaintiff from additional FMLA usage.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination/retaliation at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded punitive and/or liquidate damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable state law; and

G.      Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

David N. Korsen, Esq.
Andrew R. Olcese, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: June 15, 2021

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
David N. Korsen, Esq.
Andrew R. Olcese, Esq.

## RULE 4:5-1 CERTIFICATION

1.      I am licensed to practice law in New Jersey, and I am responsible for the above-captioned matter.

2.      I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
David N. Korsen, Esq.
Andrew R. Olcese, Esq.

## DESIGNATION OF TRIAL COUNSEL

David N. Korsen, Esquire and Andrew R. Olcese, Esquire of the law firm of Karpf, Karpf, & Cerutti, P.C. are hereby designated trial counsel.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
David N. Korsen, Esq.
Andrew R. Olcese, Esq.

# Civil Case Information Statement

## Case Details: BURLINGTON | Civil Part Docket# L-001276-21

**Case Caption:** MYERS PAUL  VS NATIONAL DCP, LLC

**Case Initiation Date:** 06/15/2021

**Attorney Name:** DAVID NATHANIEL KORSEN

**Firm Name:** KARPF, KARPF & CERUTTI, PC

**Address:** 3331 STREET RD TWO GREENWOOD SQUARE
STE 128
BENSALEM PA 19020

**Phone:** 2156390801

**Name of Party:** PLAINTIFF : MYERS, PAUL

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: PAUL MYERS?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/15/2021
Dated

/s/ DAVID NATHANIEL KORSEN
Signed